Jim FAIR, Individually, and as representative of similarly situated residents of the State of Florida, Plaintiff,

v.

J. F. TAYLOR, as Clerk of the Circuit Court of Hillsborough County, Florida, and the State of Florida, Defendants.

Charles MIRANDA, Individually, Plaintiff,

v.

James A. SEBESTA, as Supervisor of Elections of Hillsborough County, Florida, et al., Defendants.

June HARTWICK et al., Plaintiffs,

v.

Richard STONE, as Secretary of State of the State of Florida and as Commissioner of Elections, et al., Defendants.

William S. MULLON et al., Plaintiffs,

v.

Richard STONE, as Secretary of State of the State of Florida, Defendant.

Civ. Nos. 72–296, 72–299, 72–341 and 72–187.

United States District Court, M. D. Florida, Tampa and Orlando Divisions. April 23, 1973.

---

3. The other arguments raised by defendant are likewise without merit.

Florida Rural Legal Services, Pompano Beach, Fla., for plaintiffs in No. 72–341.

Minnis & Williams, St. Petersburg, Fla., for intervenor.

Jim Fair, pro se.

Arthur T. McDonald, Tampa, Fla., for interested plaintiffs in No. 72–296.

Steve A. Di Dio, Tampa, Fla., for plaintiff in No. 72–299.

Robert L. Shevin, Atty. Gen. State of Florida, and Barry Scott Richard, Deputy Atty. Gen., Tallahassee, Fla., for defendants in Nos. 72–296 and 72–341.

Richard P. Condon, in pro. per.

G. Steven Pfeiffer, of Trenam, Simmons, Kemker, Scharf & Barkin, Tampa, Fla., for defendants in Nos. 72–187 and 72–299.

Warren M. Cason, County Atty., by Michael J. O'Brien, Resident County Atty., Tampa, Fla., for Taylor and Sebesta.

Kent Spriggs, Tallahassee, Fla., for intervenor Bush; Charles Morgan, Jr., Morris Brown, Emily Carssow, Neil Bradley, Atlanta, Ga., of counsel.

Before RONEY, Circuit Judge, and KRENTZMAN and HODGES, District Judges.

BY THE COURT:

In these consolidated cases, plaintiffs, aspiring candidates for public office, challenge as unconstitutional those sections of Florida's election law which require that a candidate for a political party's nomination pay, as a condition of qualifying, five percent of the annual salary of the office sought. Fla.Stat. §§ 99.061, 99.092, and § 105.031, F.S.A. Prior Three Judge Federal District Courts and the Supreme Court of Florida have consistently held the Florida law to be constitutional. Spillers v. Slaughter, 325 F.Supp. 550 (M.D.Fla.1971); Fowler v. Adams, 315 F.Supp. 592 (M.D.Fla.1970); Wetherington v. Adams, 309 F.Supp. 318 (N.D.Fla.1970); Differenderfer v. Porter Homer (No. 68–455–Civ.Ec., S.D.Fla.1968); Bodner v. Gray, 129 So.2d 419 (Fla.1961).

These decisions were grounded on the conclusion that the state has a valid interest in assuring that (1) a nominee be the choice of a majority of party members, (2) the primary ballot be reasonably restricted in size so that a true majority choice can be made without an excessive number of "run-offs," and (3) spurious candidates be eliminated. The filing fee was held to be a valid means of achieving these ends.

Since those decisions, however, the United States Supreme Court has established a constitutional standard for filing fee systems that now requires us to reach a contrary result. Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L. Ed.2d 92 (1971).

In *Bullock*, the Court was concerned with the Texas election system which required payment of a filing fee as an absolute condition to primary ballot position. No alternative to the fee was provided. Although the Texas system employed a non-uniform fee that was exorbitant in some instances, contrary to the Florida uniform fee in reasonable amount, we think the thrust of *Bullock* renders unconstitutional a filing system which does not provide, as a method for qualification, an alternative to the payment of a substantial sum of money.

The Supreme Court held that a system which provides no alternative to the pay-

ment of a substantial fee places unequal emphasis on the wealth of both potential candidates and voters. Chief Justice Burger, speaking for the Court, explained that the very size of the fees imposed under the Texas system gives it a patently exclusionary character.

Many potential office seekers lacking both personal wealth and affluent backers are in every practical sense precluded from seeking the nomination of their chosen party, no matter how qualified they might be and no matter how broad or enthusiastic their popular support. The effect of this exclusionary mechanism on voters is neither incidental nor remote. Not only are voters substantially limited in their choice of candidates, but also there is the obvious likelihood that this limitation would fall more heavily on the less affluent segment of the community, whose favorites may be unable to pay the large costs required by the Texas system. To the extent that the system requires candidates to rely on contributions from voters in order to pay the assessments, a phenomenon that can hardly be rare in light of the size of the fees, it tends to deny some voters the opportunity to vote for a candidate of their choosing; at the same time it gives the affluent the power to place on the ballot their own names or the names of persons they favor. Appellants do not dispute that this is endemic to the system. This disparity in voting power based on wealth cannot be described by reference to discrete and precisely defined segments of the community as is typical of inequities challenged under the Equal Protection Clause, and there are doubtless some instances of candidates representing the views of voters of modest means who are able to pay the required fee. But we would ignore reality were we not to recognize that this system falls with unequal weight on voters, as well as candidates, according to their economic status.

405 U.S. at 143–144, 92 S.Ct. at 856. Thus, concluded the Court,

By requiring candidates to shoulder the costs of conducting primary elections through filing fees and by providing no reasonable alternative means of access to the ballot, the State of Texas has erected a system that utilizes the criterion of ability to pay as a condition to being on the ballot, thus excluding some candidates otherwise qualified and denying an undetermined number of voters the opportunity to vote for candidates of their choice. These salient features of the Texas system are critical to our determination of constitutional invalidity.

405 U.S. at 149, 92 S.Ct. at 859.

This is not to say that filing fees are invalid *per se*. *Bullock* specifically noted that "nothing herein is intended to cast doubt on the validity of reasonable candidate filing fees or licensing fees in other contexts." 405 U.S. at 149, 92 S. Ct. at 859.

We adhere to the prior decisions on the Florida statute which hold that a 5% filing fee, uniformly applied, is reasonable in amount and a valid means for the State to achieve its legitimate goal of controlling the ballot. Under *Bullock*, however, the State must provide an alternate method of obtaining a place on the ballot that does not involve the payment of a substantial sum of money to the State.

Because of the immediacy of the 1972 election and Florida's qualifying period which terminated at twelve o'clock noon on July 25, 1972, we entered an Order dated July 11, 1972, providing for an alternative method to the payment of the fee that would serve the purpose of the plaintiffs and other similarly situated until the Florida Legislature has had an opportunity to determine an alternative that meets constitutional standards. A copy of that Order is appended to this opinion.

## APPENDIX

BY THE COURT:

1. This is an action for declaratory and injunctive relief challenging as unconstitutional Florida Statutes 99.92(1), 103.131(g), and 105.031(3), which require a filing fee and party assessment of candidates seeking public office in an amount equal to 5% of the annual salary for such office.

2. Pursuant to 28 U.S.C. 2281 and 2284, this 3-Judge Court was properly convened to determine the constitutionality of Florida's filing fee requirements.

3. The requested class actions are properly brought as class actions under Rule 23, Federal Rules of Civil Procedure and the class is designated as that class of people who are unable to pay the filing fees and party assessment prescribed by Florida law without imposing an undue burden on their personal resources.

4. This Court is bound by the decision of the Supreme Court in Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L. Ed.2d 92 (1972) to the effect that any system for qualifying candidates for electoral office which charges a qualifying fee that tends to classify candidates and their supporters on a basis of wealth, must provide an alternative method of qualification, which alternative method does not so classify prospective candidates.

5. We therefore hold that the present system for qualification of candidates in the State of Florida is unconstitutional under Bullock v. Carter, *supra*.

6. Because of the immediacy of the coming election and the present qualifying period, the Court makes the following findings and enters the following order to be followed by a written opinion giving the Court's reasons, which will be filed within a reasonable period hereafter.

It is ordered:

1. The qualifying fee and party assessment of 5% of the annual salary of the office for which a candidate seeks to qualify is reasonable in all respects.

2. The alternative proposal submitted on behalf of the defendants is accepted as being within the limits of the constitutional requirements as a permissible alternative method for qualifying persons unable to pay the qualifying fee as follows:

A. Candidates who are able to pay the filing fee and assessments shall be required to do so at the present statutory level of 5% of the annual salary of the office sought.

B. An alternative petitioning process shall be made available to those candidates who are unable to pay the required filing fee and party assessment without imposing an undue burden on their personal resources.

C. A person seeking to avail himself of the petitioning process shall file an affidavit stating under oath that he is unable to pay the filing fee and party assessment required by Florida Statutes without imposing an undue burden on his personal resources. The affidavit shall be filed with the officer before whom the affiant would qualify for the office sought. The affidavit shall be filed as a prerequisite to circulating any petitions on the candidates' behalf.

D. The number of signatures required on a petition shall be based upon the population of the county or district represented by the office sought. 1970 federal census figures shall be used to ascertain these population figures. (Population figures are used rather than registered electors because of the change in voting districts since the last election.)

E. Candidates for offices elected on a statewide basis shall obtain the signatures of 10,000 registered electors of the state.

F. Candidates for any federal, state, or county office to be elected on less than a statewide basis shall obtain the signatures of a number of registered electors of the district or county represented by the office sought equal to 1%

**308**

of the population of such district or county, but not less than 100 signatures nor more than 3,000 signatures.

G. Candidates for nomination to statewide or other multi-county offices shall file separate petitions from each county from which signatures are sought. Each petition shall be submitted to the supervisor of elections of the county in which such petition is circulated not later than July 25, the last date for qualifying for office.

H. Each supervisor of elections to whom a petition is submitted shall check the names of the persons on the petition to verify their status as electors of that county and of the district represented by the office being sought by the candidate on whose behalf the petition was circulated and, at the earliest possible date, certify that number shown as registered electors of such county and district or other geographical unit and submit such certification to the Secretary of State. The Secretary of State shall determine whether the required number of signatures have been obtained for the name of the candidate to be placed on the ballot and shall notify the candidate and the board of county commissioners of the appropriate county or counties that the candidate's name is to be placed on the ballot.

I. There shall be no charge for verifying signatures in that only persons of limited financial means are allowed to use the petitioning process.

3. The defendants are enjoined from refusing to accept as qualified candidates any person who has complied with either of the alternatives of this order and the other requirements for qualification provided by law.

4. The motions of all intervenors for leave to intervene now pending before the Court are respectively granted.

5. The Court retains jurisdiction for the purpose of entering such other and further orders as may be necessary to effectuate the intent of this order.

DATED: July 11, 1972.