**Ethel Mae MATHEWS, etc., Plaintiff-Appellant,**

v.

**Jim LITTLE, Clerk of the City of Atlanta, Georgia, et al., etc., Defendants-Appellees.**

No. 73-2560.

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1974.

David A. Webster, Robert N. Dokson, Atlanta, Ga., for plaintiff-appellant.

Henry R. Bauer, Jr., Henry L. Bowden, John E. Dougherty, City of Atlanta, Dept. of Law, Atlanta, Ga., for defendants-appellees.

Before GODBOLD, SIMPSON and INGRAHAM, *Circuit Judges.*

SIMPSON, Circuit Judge:

The plaintiff-appellant Mathews appeals from the dismissal of her action for declaratory and injunctive relief. Her complaint alleged that the Charter

provision and ordinance[1] of the city of Atlanta imposed unconstitutional burdens upon her access to the ballot as a candidate for the Atlanta City Council. At the time we heard oral argument, several cases pertinent to our decision here had been argued and were awaiting decision by the Supreme Court. We delayed deciding this case to permit consideration of the Supreme Court's action. The cases in question have been decided and we think require that we affirm the judgment below.[2]

The Atlanta Charter and applicable city ordinance require that prospective City Council candidates pay a filing fee of $500 in order to secure a place on the ballot. Alternatively, one may submit a petition signed by not less than two percent of the registered voters in the particular candidate's council district. Appellant, a prospective but indigent candidate, filed suit, based on Title 42, U.S.C. Sec. 1983 and Title 28, U.S.C. Sec. 1343, asserting that both methods of access to the ballot discriminate unconstitutionally against poor persons in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

The Supreme Court recently decided the case of Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). The plaintiff there challenged a California Election Code provision that required prepayment of a filing fee by all prospective candidates, generally computed as a percentage of the yearly salary paid for the office sought. The Election Code provided no alternative means of access to the ballot. The Supreme Court held that "in the absence of reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay." Ibid., 94 S.Ct. at 1321. With reference to the meaning of "reasonable alternative", the Court said that "a candidate who establishes that he cannot pay the filing fee required for a place on the primary ballot may be required to demonstrate the 'seriousness' of his candidacy by persuading a substantial number of voters to sign a petition in his behalf." Ibid., 94 S.Ct. at 1321.

The only conceivable escape for appellant from the compelling authority of the Supreme Court's decision in *Lubin* would be a showing that the petition requirement of at least two percent of the registered voters from her council district, while concededly an alternative, is somehow under the circumstances not a "reasonable" alternative. In appellant's case, it was required that she supply the signatures of 299 voters, which is two percent of the 14,968 voters in the Fourth Council District of Atlanta which she sought to represent. Interestingly enough, appellant in fact qualified as a candidate on August 24, 1973, by submitting a petition with considerably more than the required 299 signatures.[3] The petition signature requirement does not appear to have been unreasonable, or even very formidable, in the case of appellant.

Further, the two percent figure is most reasonable when analogized to the facts in a similar case decided earlier by the Supreme Court, Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554. In *Jenness* the Court considered

---

1. Atlanta Charter and Related Laws Sec. 4.-1.2; Atlanta Code Sec. 10–7, and ordinance attached.

2. The other cases before the Supreme Court in addition to Lubin v. Panish, discussed infra, were: Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); American Party of Texas v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974). One or more of these cases might have been decided in a way to affect the outcome here. As it turns out, Lubin v. Panish was the Court's vehicle for explication of principles clearly controlling our decision. Extended discussion of the other cases is thus rendered unnecessary.

3. This development may suggest possible mootness. But the suit was filed as a class action under Rule 23(a) and (b)(2), F.R. Civ.P. on behalf of all other persons similarly situated to the plaintiff-appellant. We reach the merits in the interest of judicial economy and in light of the unmistakable import of Lubin v. Panish, text, supra.

the reasonableness of a Georgia law requiring prospective independent candidates to file a nominating petition signed by no less than five percent of the number of registered voters at the last general election for the office in question. The five percent figure, more than double the requirement in the case *sub judice,* was found reasonable in light of the "important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot . . . ." Jenness v. Fortson, supra, 403 U.S. at 442, 91 S.Ct. at 1976, 29 L. Ed.2d 562. We are left without any doubt whatsoever that the judgment of the lower court was correct.

Affirmed.