**Steven BIENER, et al., Plaintiff,**

**v.**

**The Honorable Frank CALIO, Defendant.**

**No.  Civ.A.02–514–GMS.**

United States District Court, D. Delaware.

July 15, 2002.

Steven Biener, Wilmington, DE, Pro se.

Steven Biener, Cozen & O'Connor, Wilmington, DE, for Plaintiffs.

Ann Woolfolk, Cara Drue Chichi, Department of Justice State of Delaware, Charles J. Durante, Collins J. Seitz, Jr., Connolly, Bove, Lodge & Hutz, Wilmington, DE, for Defendant.

## MEMORANDUM AND ORDER

SLEET, District Judge.

## I. INTRODUCTION

The plaintiff, Steven Biener ("Biener") seeks the Democratic Party nomination for United States Representative in the November 2002 election. In furtherance of this goal, Biener submitted his notice of candidacy to the State Commissioner of Elections (the "Commissioner") on June 6, 2002. He did not, however, submit the required $3,000 filing fee. On June 10, 2002, Biener and his co-plaintiff Carol Greenway commenced this action by filing a complaint for injunctive, declaratory, and other relief pursuant to 42 U.S.C. § 1983, alleging that the fee requirement violates the Qualifications, Equal Protection, and Due Process clauses of the United States Constitution.[1]

---

1. Carol Greenway is a registered Democrat who intends to vote for Biener in the Democratic Party primary election on September 7, 2002.

Presently pending before the court is Biener's motion for a preliminary injunction. Through this motion, Biener seeks to preliminarily enjoin the Commissioner from enforcing the filing fee requirement against candidates for federal office. For the following reasons, the court will deny this motion.

## II. BACKGROUND

### A. The Statutory Scheme

Elections in Delaware are governed by the rules and procedures set forth in Title 15 of the Delaware Code (the "Code"). Sections 3103 and 3106 of the Code require that all nonindigent candidates for elected office pay a filing fee in order to gain access to the ballot. Section 3101 further delegates to the state executive committee of each political party the authority to impose a filing fee on all candidates for statewide office. *See* DEL.CODE ANN. tit. 15, § 3103(a)(1). The Code does, however, provide that the fee "shall not be greater than 1% of the total salary for the entire term of office for which the candidate is filing." DEL.CODE ANN. tit. 15, § 3103(b).

A person desiring to be a candidate for statewide office must tender a copy of the Candidate Filing Form to the chair of the state committee of his or her political party, and must further tender a copy of such Form, along with the required filing fee, to the Commissioner. DEL.CODE ANN. tit. 15, § 3106(a)(1)(b). The Commissioner then notifies each county department of elections of those candidates for statewide office who have qualified under Section 3106 of the Code.

While there is no means provided by Delaware law for waiving the filing fee, there is an alternate means of ballot qualification in the case of a person who is indigent. A person is indigent if such person is receiving benefits under 42 U.S.C. § 1381, or meets the income and resources test for such benefits under 42 U.S.C. § 1382(a).[2] DEL.CODE ANN. tit. 15, § 3103(e).

The Democratic Party Executive Committee (the "Democratic Committee") is charged with setting filing fees for primary elections of democratic candidates for statewide office. On March 13, 2002, the Democratic Committee voted to impose the maximum filing fee on candidates for the federal offices of United States Representative and United States Senator in the 2002 election. Thus, the filing fee is $3,000 for candidates for the United States House of Representatives and $9,000 for those who wish to run for the United States Senate.

### B. Biener's Candidacy

Biener alleges that he is a qualified Democratic Party candidate for U.S. Representative who has met all the constitutional requirements for public office. He has, however, failed to adhere to the above-described statutory scheme by refusing to pay the $3,000 filing fee. Biener maintains that he is unwilling to pay the required filing fee out of his personal savings. He is also refusing public contributions to his campaign.

On April 15, 2002, Biener wrote to the Commissioner and requested that he suspend enforcement of Sections 3103 and 3106 of the Code because the imposition of filing fees on candidates for federal office violates the U.S. Constitution. On May 3, 2002, the Commissioner denied Biener's request, stating that he would enforce the Code as written. On June 6, 2002, Biener sent the Commissioner the candidate filing

---

**2.** Pursuant to 42 U.S.C. § 1382(a), a Delaware resident is currently considered indigent if he or she has a non-earned income of less than $6,540, or earned income of less than $13,080.

**408**

form that the Code requires, less the $3,000 filing fee. On June 12, 2002, the Commissioner wrote to Biener, acknowledging that he had received the filing form and noting that the filing will be deemed incomplete until the fee is tendered. Consequently, unless Biener tenders the filing fee on or before July 26, 2002, his name will not appear on the Democratic Party's primary ballot on September 7, 2002.

## III. DISCUSSION

■ The purpose of a preliminary injunction "is to preserve the status quo, not to decide the issues on their merits." *Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir.1997). When deciding a motion for a preliminary injunction, the court must consider the following four factors: (1) the likelihood of success on the merits; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the injunction is granted; and (4) the public interest. *See New Jersey Hosp. Ass'n v. Waldman*, 73 F.3d 509, 512 (3d Cir.1995); *see also American Life Ins. Co. v. Parra*, 25 F.Supp.2d 467, 473 (D.Del.1998). The court shall issue a preliminary injunction only if the plaintiff produces evidence sufficient to demonstrate that all four factors favor preliminary relief. *See Waldman*, 73 F.3d at 512.

### A. Likelihood of Success on the Merits

In his complaint, Biener advances three claims. First, he alleges that Sections 3103 and 3106 of the Code impermissibly add a wealth qualification to the age, citizenship, and residency requirements for congressional service specifically enumerated in the Qualifications Clauses of the

United States Constitution. *See* U.S. Const. art. I, § 2, cl. 2; art. I, § 3, cl. 3. Second, he alleges that Delaware's filing fee system violates the Equal Protection Clause because the filing fees are not reasonably necessary to accomplish a legitimate state objective. Finally, he alleges that, contrary to the Due Process Clause, Section 3103 constitutes an impermissible delegation of legislative power to a private party. The court will discuss Biener's likelihood of success on the merits with regard to each contention in turn.

### 1. Qualifications Clauses

■ Members of the House of Representatives must meet certain age, citizenship, and residency qualifications enumerated in the Constitution. *See* U.S. Const. art. I, § 2, cl. 2. States have no authority to add their own qualifications. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 800–801, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995). Furthermore, states may not evade this constitutional prohibition by "dressing eligibility to stand for Congress in ballot access clothing." *Id.* at 831, 115 S.Ct. 1842.

■ In support of his position on this point, Biener argues that, in *Bullock v. Carter*, the Supreme Court recognized that unreasonable filing fees were the functional equivalent of a wealth qualification. 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92. Without passing on the merits of such an argument, the court expresses sincere doubt that the facts of *Bullock* render it applicable to the current situation. Specifically, the court notes that the *Bullock* Court was faced with an indigent plaintiff and a filing fee requirement that left no alternative avenue for indigent candidates. The facts of the present case, however, differ in at least three important ways.[3]

---

**3.** Furthermore, in dicta, the Court in *Bullock* was careful to point out that, "[i]t must be emphasized that nothing herein is intended to cast doubt on the validity of reasonable candidate filing fees or licensing fees in other contexts." 405 U.S. at 148, 92 S.Ct. 849.

First, the *Bullock* case concerned an equal protection challenge, not a Qualifications Clause challenge. Second, Biener has not alleged that he is indigent. Indeed, he claims that he will be forced to pay the filing fee out of his personal funds, thus insinuating that he does in fact possess sufficient funds to cover this expense. Accordingly, the court views this case not as one where Biener could not pay, but rather, as one where he affirmatively has chosen not to pay. Finally, the statute presently at issue allows for exceptions in the case of indigent individuals. The court thus expresses doubt that *Bullock* is binding authority on the question presently before it.

Additionally, the defendant points to countervailing, albeit state, case law finding that filing fees are merely candidacy requirements, and thus do not *per se* add to the qualifications required for office. *See Cassidy v. Willis* 323 A.2d 598, 602 (Del.1974) (discussing the Delaware Constitution Qualifications Clause in this context); *Bodner v. Gray*, 129 So.2d 419 (Fla. 1961) (discussing the Florida Constitution Qualifications Clause in this context). Biener summarily argues that these cases are inapposite because they relate to state constitutions. He further argues that to apply these cases to the present situation would run afoul of the Supreme Court's decision in *U.S. Term Limits, Inc. v. Thornton.* 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995).

In *Thornton*, the Supreme Court ruled that a state law imposing term limits on individuals elected to Congress violated the Qualifications Clause of the United States Constitution. 514 U.S. at 845, 115 S.Ct. 1842. In so holding, the Court again reiterated the principle that states have no power to impose additional qualifications on individuals wishing to hold federal public office. *See id.* at 831, 115 S.Ct. 1842. Nor may states avoid this prohibition sim-

ply by calling a qualification by another name. *See id.*

In light of this opinion, Biener now argues that a filing fee requirement is merely an impermissible qualification dressed in "ballet access clothing." The court expresses doubts as to this position. Although Biener discusses *Thornton* at great length, *Thornton* stands for an unremarkable, and uncontested, proposition. Biener has failed to explain, however, how the present state law imposing a procedural fee requirement is, in fact, a substantive wealth qualification "dressed in ballot access clothing."

Biener next engages in a very thorough discussion of the Framer's clear intention to reject a wealth qualification. However, the court finds such a discussion unhelpful in the present context because there does not appear to be a dispute between the parties on this point.

In light of the foregoing, the court concludes that Biener has failed to meet his burden of demonstrating a likelihood of success on the merits of his Qualifications Clause claim.

**2. Equal Protection**

In analyzing an equal protection challenge to ballot access laws, the Supreme Court has instructed "that the laws must be 'closely scrutinized' and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster." *Bullock*, 405 U.S. at 144, 92 S.Ct. 849.

■ In the present case, Biener challenges the constitutionality of Section 3103(b), which provides that the filing fee for a statewide candidate "shall not be more than 1% of the total salary for the entire term of office for which the candidate is filing . . . ." Specifically, he argues that the imposition of this filing fee vio-

**410**

lates the Equal Protection Clause of the United States Constitution because it excludes candidates based upon their economic status, and does nothing to further a legitimate state objective.[4] The court again must express doubt as to Biener's likelihood of success on the merits.

The Supreme Court has recognized that a state has a legitimate interest in regulating the number of candidates on the ballot. *See Bullock*, 405 U.S. at 145, 92 S.Ct. 849. Specifically, the Court has noted that, "the State understandably and properly seeks to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority ... voting, without the expense of runoff elections." *Id.* Furthermore, the Court recognized the state interest in protecting the integrity of its political processes from frivolous or fraudulent candidacies. *See id.* In light of the Supreme Court jurisprudence on this issue, the court thus expresses its doubts as to the success of an equal protection challenge relating to the legitimacy of Delaware's interests.

Having determined that Delaware may have legitimate interests in this regulation, the court must now determine if Biener is likely to successfully argue that the Delaware filing fee is not reasonably necessary to the accomplishment of those interests. In support of his position, Biener argues that, in *Bullock*, the Supreme Court "expressly rejected" the argument that the payment of a filing fee adequately measures the seriousness of his or her candidacy. Furthermore, citing the Supreme Court case *Lubin v. Panish*, Biener submits that the Court has cited only petition requirements and primary elections as legitimate methods of gauging the seriousness of a candidate's intentions. 415 U.S.

709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). The court must again express doubt as to Biener's interpretation of the Supreme Court's rulings in *Bullock* and *Lubin*.

As the court noted above with regard to *Bullock*, the issue presented in that case dealt solely with a statutory scheme that left no alternatives for indigent individuals wishing to campaign. This was likewise the precise issue addressed in *Lubin*. Thus, while the Court in *Bullock* did find that the fee requirement at issue was not a reasonable means for achieving the stated reason of limiting the ballot to serious candidates, Biener fails to address the full nature of the court's holding. Specifically, the Court stated that:

> There may well be some rational relationship between a candidate's willingness to pay a filing fee and the seriousness with which he takes his candidacy, but the candidates in this case affirmatively alleged that they were *unable*, not simply *unwilling*, to pay the assessed fees, and there was no contrary evidence. (emphasis in original)

*Bullock*, 405 U.S. at 145–146, 92 S.Ct. 849.

Thus, because that State regulatory scheme did not allow access to indigents, the Court held that the filing fee requirement was not relevant to the stated objective of weeding out spurious candidates. *See id.* The Delaware scheme presently at issue unquestionably allows for indigent access. Accordingly, the court finds the holdings in *Bullock* and *Lubin* distinguishable on their facts.

With regard to Biener's argument that the Supreme Court has sanctioned only the use of petitions and primary elections as a means of achieving ballot regulation, the court must again express doubt as to

---

4. Biener concedes that his equal protection challenge is based on the lack of a non-payment alternative for all candidates, not on the reasonableness of the $3,000 filing fee. *See*

Plaintiffs' Answering Brief in Opposition to the Defendant's Motion to Dismiss, at 11, n. 5. Thus, the court will not address the reasonableness of the fee.

Biener's reading of the case law. Specifically, the *Lubin* Court, in dicta, suggested petitions as an alternative method by which indigent candidates could have their names placed on the ballot without having to pay a filing fee. *See* 415 U.S. at 718, 94 S.Ct. 1315. It did not suggest that a filing fee in and of itself was unconstitutional in a situation where the candidate is not indigent, but rather, unwilling to pay the fee, as are the facts of the case at bar.

Moreover, even were the court to be persuaded that *Lubin's* holding is applicable to the present case, the court notes that Delaware's stated reasons for imposing the filing fee are not merely to test the seriousness of candidates. *See* DEL.CODE tit. 15, § 101A (stating that the purpose of the relevant title is to avoid lengthy ballots which tend to create voter confusion and tend to clog the election machinery.). On these facts, requiring a fee of non-indigent candidates would appear to be a rational means of furthering the state's interests in regulating the size of the ballot and avoiding voter confusion leading to the clogging of the election machinery. *See Adams v. Askew*, 511 F.2d 700, 704 (5th Cir.1975) (so holding).

### 3. Due Process Clause

The Due Process clause contained in the Fourteenth Amendment of the United States Constitution prohibits a state from "depriv[ing] any person of life, liberty or property, without due process of law." U.S. CONST. amend. 14, § 1. In the present case, Biener challenges Section 3103(a) and (c) as impermissibly delegating the authority to set a filing fee to a private party.

The threshold issue is whether ballot access is a protected liberty or property interest. The Commissioner contends that it is neither because the Supreme Court has held that impositions on the right to run for state political office do not implicate the Due Process Clause. *See Snowden v. Hughes*, 321 U.S. 1, 7, 64 S.Ct. 397, 88 L.Ed. 497 (1944). The Supreme Court has not, however, addressed this issue in terms of a federal political office. Furthermore, the only lower court decision to address the topic as it relates to federal political office summarily disposed of the candidate's claim of a due process violation with little analysis. *See Fowler v. Adams*, 315 F.Supp. 592, 595 (M.D.Fla.1970). Thus, in addition to having been effectively overruled on other grounds by subsequent decisions, this citation is, at least, unpersuasive. *See Fair v. Taylor*, 359 F.Supp. 304 (M.D.Fla.1973), *vacated, Bush v. Sebesta*, 416 U.S. 918, 94 S.Ct. 1916, 40 L.Ed.2d 276 (1974).

■ In contrast, Biener argues that access to official election ballots represents an integral element in the effective exercise and implementation of First Amendment activities.[5] As support for this proposition, he cites to *Briscoe v. Kusper*, 435 F.2d 1046, 1053 (7th Cir.1970). In *Briscoe*, the court was faced with an argument that the Chicago Board of Election Commissioners had improperly interpreted and applied the relevant statutory provisions in denying candidates with legally sufficient petitions places on the ballots. *See id.* On those facts, the Seventh Circuit determined that the Supreme Court's decision in *Snowden v. Hughes*, which found no property interest in the right to run for state office, did not preempt consideration of the plaintiffs' constitutional due process claim on the bases of freedom of speech

---

5. It is undisputed that the concept of "liberty" protected against state impairment by the Due Process Clause of the Fourteenth Amendment includes the freedoms of speech and association. *See Bates v. City of Little Rock*, 361 U.S. 516, 523, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960).

and association. *See id.* at 1054. In light of the Seventh Circuit's analysis, and again expressing no view on the ultimate merit of Biener's contentions, the court concludes that Biener has at least a colorable liberty interest argument. For purposes of the present motion then, the court will continue on with its Due Process Clause analysis.

 Assuming that there is a liberty or property interest at stake, the Due Process Clause limits the manner and extent to which a state legislature may delegate legislative authority to a private party. *See General Elec. Co. v. New York State Dept. of Labor,* 936 F.2d 1448, 1454 (2d Cir.1991) (collecting cases). Specifically, a delegation of authority that fails to supply standards sufficient to guide a private party's discretion runs afoul of the Constitution. *See id.* at 1455.

At issue is Section 3103, which provides that the filing fee exacted by the political party shall not be greater than one percent of the total salary for the entire term of office for which the candidate is filing. Biener contends that this language fails to provide the requisite guidance to Delaware's political parties. Specifically, he argues that the statute lacks any suggestion of how the fee should be set or what criteria to use in setting the fee to meet the state's interests.

The court doubts the merits of this contention. In capping the fee at one percent, the state legislature has implicitly, if not explicitly, determined that any fees within that range would adequately address the state's legitimate ballot concerns. Any discretion that the political parties retain within that zero to one percent fee range is simply *de minimus.*

Thus after having thoroughly considered Biener's likelihood of success on the merits of each of his three constitutional claims, the court concludes that he has not demonstrated such a likelihood on any of them.

Further, as he has not met the first requirement for a preliminary injunction, the court need not continue with its analysis of the remaining factors. *See Waldman,* 73 F.3d at 512 (stating that the court shall issue an injunction "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief.").

## IV. CONCLUSION

Because Biener has failed to demonstrate a likelihood of success on the merits, the court is powerless to grant the requested injunctive relief.

For these reasons, IT IS HEREBY ORDERED that:

1. Biener's motion for a preliminary injunction (D.I.5) is DENIED.