**Lee M. CASSIDY et al., Plaintiffs,**

v.

**Burton D. WILLIS, State Election Commissioner, et al., Defendants.**

Supreme Court of Delaware.

Submitted June 12, 1974.

Decided July 11, 1974.

Reargument Denied July 24, 1974.

Arlen B. Mekler, of Wise, Lindh, Mekler & Evans, Wilmington, for plaintiffs.

Kent Walker, State Sol., Wilmington, for defendants Members of the Department of Elections for New Castle County.

Hiram W. Warder, Wilmington, for defendants Leo T. Marshall, Democratic City Committee, and Democratic City Executive Committee.

Harvey B. Rubenstein, Wilmington, for defendants Edward F. Peterson, New Castle County Democratic Committee, and New Castle County Democratic Executive Committee.

Before HERRMANN, Chief Justice, DUFFY, Associate Justice and McNEILLY, Judge.

DUFFY, Justice:

This case puts in issue the constitutionality of 15 Del.C. § 3104 and 15 Del.C. § 3107 which require the payment of filing fees by certain candidates for public office.

I

The Court of Chancery certified to this Court and we accepted for decision the following questions:

1. DO 15 DEL.C. § 3104 AND 15 DEL.C. § 3107 VIOLATE ARTICLE II, SECTION 3 OF THE DELAWARE CONSTITUTION OF 1897?

2. DO 15 DEL.C. § 3104 AND 15 DEL.C. § 3107 VIOLATE THE 14TH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES?

The facts set forth in the certification are these:

Plaintiffs are citizens of Delaware who desired to be candidates for public offices in 1972 primary elections of the Democratic Party. They paid under protest or

refused to pay, respectively, filing fees established by Party Committees for certain offices, as follows:

1. Howard H. Brown paid under protest $2,100 established by the Wilmington City Executive Committee as the filing fee for a candidate for the office of Mayor.

2. Allen D. Kagel paid under protest $180 established by the New Castle County Executive Committee as the filing fee for a candidate for election to the office of State Senator.

3. Anthony C. Moore paid under protest $180 established by the New Castle County Executive Committee as the filing fee for a candidate for election to the office of State Representative.

4. Russell N. Morris refused to pay $720 established by the New Castle County Executive Committee as the filing fee for a candidate for election to the office of Register in Chancery.

5. Lee M. Cassidy refused to pay $150 established by the Wilmington City Executive Committee as the filing fee for a candidate for election to the office of City Councilman.

Each plaintiff met the qualifications of the office he sought. All plaintiffs were financially able to pay the respective filing fees but were unwilling to do so.

Although the primary elections involved have long since been held, the controversy remains viable because of the claims for refund and the importance of the issue to the election process. Accordingly, we regard the questions as ripe for decisions.

II

The statutes provide, in pertinent part, as follows:

15 Del.C.

" § 3104. Filing fees

(a) Filing fees for Primary Election for candidates for any office of any po-

litical party shall be set in the following manner:

(1) Candidates for statewide office shall be set by the State Executive Committee of the respective political party.

(2) Candidates for county or county-wide office and members of the General Assembly shall be set by the County Executive Committee of the respective political party of the county in which the contest is to be held.

(3) Candidates for municipal office for any municipality which holds its election at the time of the general election shall be set by the City Executive Committee of the respective political party of the city in which the contest is to be held.

.    .    .    .    .    .

(b) The filing fees shall not be greater than 2% of the total salary for the entire term of office for which the candidate is filing.

(c) The State Chairman, County Chairman and City Chairmen of each political party shall notify the State Election Commissioner and the respective Departments of Elections of the amount of the filing fee set pursuant to this section. The notification shall be prior to the dates set for candidates to file for nomination pursuant to section 3107 of this title.

.    .    .    .    .    .

"§ 3107. Filing of candidacy for nomination at a primary election; withdrawal

(a) Any person desiring to be a candidate or to be voted for in a primary election as a candidate for nomination shall give notice in the following manner:

.    .    .    .    .    .

(b) All candidates at the time of giving notice  .  .  .  shall tender the required filing fee, by giving a check to the [State Election] Commissioner, payable to the State Committee of the can-

didate's political party. The Commissioner shall on the same day send the check where applicable and a copy of the notice of filing to the State Chairman of the respective political party. The Commissioner shall also send a copy of the notice of filing to each Department of Elections.

(c) All candidates for county or county-wide office, for member of the General Assembly . . . at the time of giving notice . . . shall tender the required filing fee, if applicable, by giving a check to the Department of Elections of the county in which the candidate resides, payable to County Committee of the candidates political party. The Department shall on the same day send the check, where applicable, and a copy of the notice of filing to the County Chairman of the respective political party. The Department of Elections shall also send a copy of the notice of filing to the Commissioner.

(d) All candidates for municipal offices for any municipality which holds its election at the time of the general election shall at the time of giving notice . . . tender the required filing fee by giving a check to the Department of Elections of the county in which the candidate resides, payable to the City Committee of the candidates political party. The Department shall on the same day send the check and a copy of the notice of filing to the City Chairman of the respective political party. The Department shall also send a copy of the notice of filing to the Commissioner.

(e) Any condidate who has filed for nomination . . . may withdraw the filing by notifying the respective state agency with whom the original notice was filed . . . . The notice of withdrawal shall be filed before 12

o'clock noon on the 5th day after the filing deadline . . . . The filing fee of the candidate so withdrawing shall be returned to him by the political party. In the event that a candidate withdraws after the deadline, he shall forfeit his filing fee to the political party. In the case where no such filing fee is required for a candidate for election or for a candidate for the position of delegate or alternate to any state political party convention, any such candidate who withdraws after the deadline shall pay to the treasurer of this State a fee of $50."

Before discussing plaintiffs' contentions we note that they have attempted to raise issues about qualifications and filing fees for offices other than those they seek, respectively. Plaintiffs sue in their own right, not representatively, and the facts stated in the certification are limited to those governing the offices which they sought. Under these circumstances we conclude that each plaintiff lacks standing here to challenge the filing fee requirements for any office other than that for which he was a candidate. Hence, we exclude from this opinion any ruling as to any office other than one sought by a plaintiff here.[1]

### III

Plaintiffs argue that the statutes violate both the Federal and State Constitutions. Taking the former first, plaintiffs rely on several decisions by the United States Supreme Court, principally, Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L. Ed.2d 702 (1974) and Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

Beyond doubt those decisions have a significant impact upon the election process and so should be read with care by Delaware legislators because compliance

[1]. For this reason cases cited by plaintiffs from other jurisdictions and relating to qualifications for Federal office are not pertinent. See State ex rel. Chavez v. Evans, 79 N.M. 578, 446 P.2d 445 (N.M.1968); Exon v. Tiemann, 279 F.Supp. 609 (D.Neb.1968); Stack v. Adams, 315 F.Supp. 1295 (N.D. Fla.1970).

with them is required of State officials responsible for conduct of elections. As we have observed, however, our inquiry is not a general one. The submission compels us to determine only to what extent the cases apply to the facts fixed in the certification and, specifically, whether they require us to strike down the filing fee requirements here involved.

In *Lubin* Chief Justice Burger wrote for a Court unanimous in result and almost so in rationale in determining that the California system did not meet the requisite standard. After noting an apparent conflict between the "steady trend" toward limiting the size of the ballot (a State interest said to be of the "highest order") and "increasing pressure for broader access to the ballot", he found an accommodation by holding that a State, "in the absence of reasonable alternative means of ballot access, . . . may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay". In short, a filing fee requirement may not be used to deny an indigent access to the ballot.[2]

Our reading of *Lubin* persuades us that, beyond doubt, the decision is based on the indigency of a candidate. We have already made clear that the decision has significant mandates for the election process but inability to pay the fee in question is so much a part of the decision that we cannot ignore it here. That factor runs all the way through the discussion by the Chief Justice of both the facts and the philosophy of constitutional law applied, and it is emphasized by the concurring opinion of Justice Douglas, who said that "[w]hat we do today thus involves no new principle, nor any novel application" because the case is "clearly controlled by prior decisions applying the Equal Protection Clause to wealth discriminations".

*Bullock* has the same foundation. There the Court struck down a Texas filing fee system under which candidates for office were required to pay a portion of the cost of conducting the primary election. Fees ranged as high as $8,900 and the Court said that "the very size of the fees imposed under the Texas system gives it a patently exclusionary character" and thus violates traditional equal protection concepts. See also the discussion by the Chief Justice in *Lubin*. The Court applied the concepts in rejecting the use of fees as the only way of determining a candidate's "seriousness". Significantly, the plaintiff-candidates were *"unable,* not simply *unwilling,* to pay the assessed fees". (Emphasis in the opinion.) The distinction made by the Court is critical for present purposes.

In this case plaintiffs are not indigent—indeed they affirmatively state that they are "financially able" but are "unwilling" to pay the fees in question. And they make no attack whatever on reasonableness of the fees. Thus the key facts on which *Lubin* and *Bullock* are based are missing here and the difference is determinative. And no other basis has been advanced for striking the statutes down as violative of the Federal Constitution.[3]

In summary, *Lubin, Bullock* and similar cases cited by plaintiffs include indigency or inability to pay a filing fee as a salient feature and it is not present here. As indicated above, the Supreme Court made a meaningful distinction in *Bullock* between a candidate who is unable to pay and one who is simply unwilling to pay, and then said this:

"It must be emphasized that nothing herein is intended to cast doubt on the

2. In dicta the Court also rejected as "dubious at best" a suggestion that a write-in procedure without filing fee would be an adequate alternative.

3. Plaintiffs' reliance upon Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), is similarly misplaced. There the Supreme Court found the poll tax unconstitutional but, clearly, as a violation of the Equal Protection Clause because "wealth" was the basis on which lines were drawn.

validity of reasonable candidate filing fees or licensing fees in other contexts."

No case has been called to our attention in which a candidate was able to pay a filing fee but was unwilling to do so.

## IV

We turn now to plaintiffs' attack upon the statutes as violative of the Delaware Constitution. The contention, as we understand it, is that the statutes as applied to candidates for the General Assembly, add to the exclusive qualifications for office stated in Art. II, § 3 of the Constitution, Del.C.Ann., and thus are invalid. The argument is without merit. In our view, a filing fee paid as part of the election process does not, *per se*, add to the qualification for office. It is a requirement for candidacy, not for office, and a State has both a "legitimate interest in regulating the number of candidates on the ballot" and a "duty to protect the integrity of its political processes from frivolous or fraudulent candidacies". Bullock v. Carter, supra. In short, the State may, in pursuit of that interest and to perform that duty, require payment of a reasonable filing fee and, standing alone, that is not an invalid addition to the qualifications for office.

## V

The Attorney General has joined plaintiffs in their contention that the statutes are unconstitutional. He says that a filing fee amounts to a taking of property without due process and, quite correctly, he says that the Department of Elections acts as a mere conduit in processing the fee from a candidate to the political party which fixes the fee, limited only by the 2% maximum and without either guidelines to or accountability for expenditure. In that

context, argues the Attorney General, there is no ascertainable public purpose.

We agree that explicit guidelines may be desirable but we are not persuaded that the absence of specificity invalidates the statutes. Implicit in them are legitimate State purposes and interests to which the fee requirements seem reasonably and rationally related. Those were found and approved by a three-judge Court convened in Wetherington v. Adams, 309 F.Supp. 318 (N.D. Fla.1970). In rejecting an attack on the Florida filing fee system, the Court stated three purposes to which the fee requirement was directed: (1) a desire that only serious, good faith candidates place their names on the ballot; (2) to provide support for political parties so as to encourage and strengthen them; (3) to limit the number of candidates so that the machinery set up by the Legislature for the purposes of electing public officials will not become inoperative.

We recognize that the equal protection concepts announced in *Lubin* and *Bullock* make the result of *Wetherington* inoperative, but State interest in the objectives remains valid in an attack by a non-indigent candidate and where there has been no fact showing to the contrary.[4]

The State argues also that the statutes permit a political party to collect a filing fee from a candidate and then use his own funds to support a competitor for the office. The argument goes to essential fairness but, in the context of the certification, it is entirely hypothetical and we decline to consider it.

\*   \*   \*   \*   \*   \*

Finally, we recommend that the General Assembly promptly review the amount of permissible fees which may be assessed under the statutes (a candidate for the United States Senate may be required to pay a fee of $5,100, for example) and, in particu-

---

4. Fair v. Taylor, 359 F.Supp. 304 (M.D.Fla. 1973) applies the *Bullock* standard of equal protection and so reached a different result but the order published with the opinion

directs that candidates who are able to pay the 5% filing fee shall do so, candidates who are not so able are given an alternate petitionary process.

lar, the law which must be followed when a candidate for public office is unable to pay a filing fee.

\*     \*     \*     \*     \*     \*

Each certified question will be answered in the negative.

## UPON PETITION FOR REARGUMENT

Plaintiffs seek reargument in a petition that is largely a broadside attack upon all filing fee requirements (including the reasonableness thereof).

We have emphasized that this certification involves a limited record and it cannot be used as a vehicle for a constitutional ruling of the dimensions which plaintiffs argue. Unquestionably, the case points up critical weaknesses in the Delaware filing fee scheme (to which we called attention) and we have urged the General Assembly to address itself to them. But, litigating for themselves on the record they made, plaintiffs are not entitled to relief. Importantly, they have not cited a single case in which a candidate even sought relief when he was able but unwilling to pay the fee in question.

Reargument is denied.