Roger MERLE; Green Party State Committee, Inc., Appellants,

v.

UNITED STATES of America.

No. 02–3531.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 27, 2003.

Decided Sept. 30, 2003.

Bruce I. Afran, Princeton, NJ, for Appellants.

Scott R. McIntosh, Washington, DC, for Appellee.

Before SLOVITER, AMBRO, Circuit Judges, and TUCKER,* District Judge.

## OPINION

AMBRO, Circuit Judge.

Roger Merle, an employee of the United States Postal Service, wishes to run for Congress and retain his position with the Postal Service. The District Court concluded that the Hatch Act bars him from doing so. We agree and thus affirm.

## I. Facts and Procedural History

Merle is a rural letter carrier for the Postal Service in Bridgeton, New Jersey. In June 2002, he filed nominating petitions with the New Jersey Division of Elections seeking qualification as a candidate for election to the United States House of Representatives from New Jersey's Second Congressional District in the November 2002 election. He wished to campaign as a candidate for the Green Party. A provision of the Hatch Act, 5 U.S.C. § 7323(a)(3), prohibits candidacies by federal employees for any "partisan political office" and has been applied to Postal Service employees. *Kane v. MSPB*, 210 F.3d 1379, 1381 (Fed.Cir.2000). As a result, Merle feared that he would be terminated under § 7323(a)(3), or face other substantive penalties if he campaigned for office.

Merle and the Green Party State Committee filed suit to obtain a declaratory judgment that he could not lawfully be removed or suspended for running for election as a United States Representative because § 7323(a)(3) is unconstitutional as applied to congressional candidacies by federal employees. The United States filed a motion to dismiss, which was granted by the District Court. This appeal followed.

## II. Discussion

We have jurisdiction over this appeal under 28 U.S.C. § 1291. We review an order granting a motion to dismiss for failure to state a claim *de novo*. *Beidle-*

---

* Honorable Petrese B. Tucker, United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

*man v. Stroh Brewery Co.,* 182 F.3d 225, 229 (3d Cir.1999).

## A. Mootness

█ We lack jurisdiction when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The Government argues that this appeal has been mooted by the occurrence of the 2002 election and the filling of the Congressional office for which Merle wished to be a candidate. We reject this contention. This controversy, like most election cases, fits squarely within the "capable of repetition yet evading review" exception to the mootness doctrine. *See Morse v. Republican Party of Virginia,* 517 U.S. 186, 235, 116 S.Ct. 1186, 134 L.Ed.2d 347 (1996) ("Like other cases challenging electoral practices ... [,] this controversy is not moot because it is 'capable of repetition, yet evading review.'" (citing *Anderson v. Celebrezze,* 460 U.S. 780, 784 n. 3, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Storer v. Brown,* 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969))).

Under the "capable of repetition" exception, a court may exercise its jurisdiction and consider the merits of a case that would otherwise be deemed moot when "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (citation and internal modifications omitted). The Government does not contest with much vigor that, as the duration of a campaign for the House of Representatives necessarily cannot exceed two years (the time between elections), the life expectancy of Merle's claim is too short to be fully litigated prior to cessation or expiration.

The Government does contest, however, that there is a "reasonable expectation that the same complaining party will be subject to the same action again." It argues that Merle has not alleged that he intends to run for election to the House of Representatives in 2004 and that the Green Party has not alleged that it wishes to nominate a candidate that would be subject to the Hatch Act. We disagree with the Government's assumption that such an allegation would be necessary. We think it reasonable to expect that Merle will wish to run for election to the House of Representatives either in 2004 or at some future date. *Int'l Org. of Masters, Mates & Pilots v. Brown,* 498 U.S. 466, 473, 111 S.Ct. 880, 112 L.Ed.2d 991 (1991) ("Respondent has run for office before and may well do so again. The likelihood that the Union's rule would again present an obstacle to a preconvention mailing by respondent makes this controversy sufficiently capable of repetition to preserve our jurisdiction."); *see also Norman v. Reed,* 502 U.S. 279, 288, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992) (finding no mootness in case challenging candidate eligibility because "[t]here would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints if we should fail to resolve the constitutional issues" presented in case). And because the Hatch Act remains binding law, any future candidacy of Merle will be similarly affected by his employment with the federal government. *Morse,* 517 U.S. at 235, 116 S.Ct. 1186 (finding that expectation of repetition is reasonable in case challenging convention delegate fees because "the Party has not disavowed the practice of imposing a delegate filing fee for its nominating convention").

Even if we were to require some expression of intent, Merle has provided one. As the Government itself admits, Merle contends in his brief that he "and other governmental employees will be subject to the continuing stricture of the Hatch Act in other federal elections." The Government dismisses this as a truism that says nothing about Merle's plans. We disagree. Merle will only be affected by the Hatch Act in future elections if he is a candidate for partisan office in those elections—if he is a voter, a volunteer, or a bystander, the Hatch Act will not apply to him. By stating that he will be subject to the Hatch Act in future elections, we perceive Merle is stating that he intends to run for partisan office in future elections.

For these reasons, we conclude that Merle's claim is not moot because it fits within the "capable of repetition yet evading review" exception.

## B.  Merits

The Qualifications Clause provides that "[n]o person shall be a Representative who shall not have attained the Age of twenty five Years and have been seven Years a citizen of the United States and who shall not, when elected, be an inhabitant of that State in which he shall be chosen." U.S. Const., article I, § 2, cl. 2. This list of qualifications is exclusive and fixed. *U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 827, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995) ("[N]either Congress nor the States should possess the power to supplement the exclusive qualifications set forth in the text of the Constitution."). Merle argues that the Hatch Act, as applied to those seeking candidacy as United States Representatives, impermissibly imposes the additional qualification of non-federal employment. As a result, he argues that the Hatch Act can, and should, be construed such that the office of United States Rep-

resentative is not a "partisan political office" under the Hatch Act.

■ We disagree. By the plain terms of the Hatch Act, the office of United States Representative is a partisan political office. Further, the Act does not impermissibly add additional qualifications to those seeking to serve as United States Representatives, but is rather a permissible regulation of the activities of federal employees. As a result, we affirm the District Court's order dismissing Merle's complaint.

The term "partisan political office" contained in the Hatch Act cannot be construed as inapplicable to candidates for the office of United States Representative. Such a construction is at odds both with the definition of the term as contained within the Hatch Act and with congressional intent. The Hatch Act defines "partisan political office" to mean "any office for which any candidate is nominated or elected as representing a party any of whose candidates for Presidential elector received votes in the last preceding election at which Presidential electors were selected." 5 U.S.C. § 7322(2). Candidates for the office of United States Representative are routinely nominated and elected as representatives of the Democratic and Republican parties, whose candidates for Presidential elector received votes in the last preceding Presidential election.

It is true, as Merle notes, that the statutory language "makes no reference to federal elective offices such as U.S. Representative." But we do not find this dispositive. In defining the term "partisan political office," Congress could have explicitly listed those offices it deemed partisan political offices. Or it could have, as it did, provide a definition of the types of offices it deemed to be partisan political offices, without listing any particular offices that

fall within that definition. Congress chose the latter route. As a result, the office of United States Representative need not be specifically enumerated in the statute for it to be included within it. Thus we hold that the office of United States Representative is a "partisan political office" as that term is defined in the Hatch Act.

Our holding, contrary to Merle's assertions, is supported by the legislative history of the Hatch Act. Merle claims that the Act's legislative history contains no evidence that it was intended to reach to federal elective offices. But the Supreme Court has determined the contrary. Congress, it concluded, intended that "the general proscription against partisan activities" include prohibitions on "candidacy for nomination or for the election to any National, State, county or municipal office." *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 572 n. 18, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (quoting 86 Cong. Rec. 2943 (March 15, 1940)). A United States Representative is a national office.

▪ Nor are we persuaded that the Hatch Act is unconstitutional. The Act allows a citizen a choice. It does not disqualify any individual from running for public office, but rather provides for the removal or suspension from public employment of any *federal employee* who is a candidate in a partisan election. This distinction, between laws that bar potential candidates from running for elected office and laws that bar potential candidates from continuing to work for state or federal governments (so-called "resign to run" laws), is a key distinction for the purpose of the Qualifications Clause. The former "imposes additional qualifications on candidates and therefore violates the Qualifications Clause, while the latter category is constitutionally acceptable since it merely bars state officeholders from remaining in their positions should they choose to run for federal office." *Joyner v. Mofford*, 706 F.2d 1523, 1528 (9th Cir.1983) (sustaining provision of Arizona constitution forbidding state officials from retaining office while running for elected federal positions against Qualifications Clause challenge). A "resign to run" law may force Merle to choose between remaining as an employee of the federal government and running for elected office, but forcing Merle to make that decision does not constitute an additional qualification for the office of United States Representative.[1] *See National Association of Letter Carriers*, 413 U.S. at 556, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (upholding constitutionality of Hatch Act against First Amendment challenge because neither the First Amendment "nor any other provision of the Constitution" prohibits Congress from regulating the conduct of federal employees by prohibiting "becoming a partisan candidate for, or campaigning for, an elective public office"); *see also United States Term Limits*, 514 U.S. at 835 n. 48, 115 S.Ct. 1842 (noting validity of resign-to-run statutes that "place no obstacle between a candidate and the ballot or his nomination or his election").

### III. Conclusion

For these reasons, we affirm the judgment of the District Court.

---

1. Indeed, as the District Court noted, the Hatch Act is not even as draconian as some "resign to run" laws. Merle may retain his position and wait for the Government to meet its burden of responding to his candidacy with a sanction of removal or suspension, something that might not happen.