

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-19-2004

# Biener v. Calio

Precedential or Non-Precedential: Precedential

Docket No. 03-1607

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Biener v. Calio" (2004). *2004 Decisions.* Paper 885.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/885

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT
_____

No. 03-1607
_____

STEVEN BIENER; CAROL
GREENWAY,
           Appellants

v.

FRANK CALIO, The Honorable, State
Election Commissioner;
DEMOCRATIC PARTY OF THE
STATE OF DELAWARE

_____

APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

(D.C. No. 02-cv-00514)
District Judge: The Honorable
Gregory M. Sleet

_____

ARGUED OCTOBER 28, 2003

BEFORE: SCIRICA, Chief Judge,
NYGAARD, and AMBRO,
Circuit Judges.

(Filed: March 19, 2004)
_____

Leslie G. Bohner, Esq.
Drinker Biddle & Reath
18th and Cherry Streets
One Logan Square
Philadelphia, PA 19103

Charles H. Wampold, III, Esq. (Argued)
Drinker, Biddle & Shanley
105 College Road East
P. O. Box 627, Suite 300
Princeton, NJ 08542
    Counsel for Appellants

C. Drue Chichi, Esq. (Argued)
Aleph Ann Woolfold, Esq.
Department of Justice
820 North French Street
Wilmington, DE 19801
    Counsel for Appellee, The Honorable
    Frank Calio

Charles J. Durante, Esq. (Argued)
Connolly, Bove, Lodge & Hutz
1007 North Orange Street
P. O. Box 2207
Wilmington, DE 19899
    Counsel for Appellee, Democratic
    Party DE

Bonita P. Tenneriello, Esq.
National Voting Rights Institute
27 School Street
Suite 500
Boston, MA 02108
    Counsel for Amicus-Appellant

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

Appellant Steven Biener, a Delaware citizen who sought nomination as the Democratic Party's candidate for the United States House of Representatives ("the House"), appeals the District Court's grant of summary judgment against him. Biener and Carol Greenway, a registered voter who is a Biener supporter, sued the Democratic Party of the State of Delaware ("the Party") and Frank Calio, Delaware's state commissioner for elections, alleging that the $3000 filing fee for the 2002 Democratic primary was unconstitutional. The District Court rejected Biener's arguments under the Qualifications, Equal Protection, and Due Process Clauses and granted summary judgment on behalf of the Party and Calio.

The Delaware statute provides a filing fee exception for indigent candidates who are unable to pay a fee. Biener challenges the lack of a ballot access alternative for non-indigent candidates. He asserts that he should have a choice not to pay the fee. We conclude that the availability of a choice is outcome determinative for Biener's Qualifications and Equal Protection Clause claims. Those claims fail. Additionally, we conclude that there is no due process violation. We will therefore affirm the District Court's grant of summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

Unlike general elections, which are held by the state to select government office-holders, primary elections are conducted by the state on behalf of and as a convenience to political parties to assist them in selecting their candidates for office. Under Delaware law, individual political parties share responsibility with the state for election primaries. Political parties are authorized to set the filing fee amount, so long as it does not exceed 1% of the total salary for the term of office the candidate seeks. 15 Del. Code § 3103(a)-(c). In 2002, the Party set the filing fee for candidacy to the House at $3000.

When a party opts to impose a filing fee on candidates, Delaware law provides only one exception. 15 Del. Code § 3103(d)-(e). Candidates who demonstrate they are indigent by virtue of qualification for federal benefits may, in lieu of a filing fee, access the primary ballot by obtaining signatures on a petition. *Id*.

Biener sought to be included on the ballot for the 2002 Democratic primary as a candidate for the House. He ran on an anti-election spending and anti-special interest platform, and did not solicit money for his campaign. Biener submitted the necessary paperwork to the state and the Party, but was informed that because he is non-indigent he needed to remit the $3000 filing fee or would be left off the Democratic primary ballot.

2

Biener filed suit against Calio seeking declaratory and injunctive relief. Calio filed an unopposed motion to join the Party as a defendant, and that motion was granted. The District Court denied Biener relief, stating that Biener had not shown a likelihood of success on any of his claims.

Once his complaint for declaratory and injunctive relief was rejected, Biener paid the $3000 filing fee. He then amended his complaint to seek a refund of the fee, which constituted two-thirds of the entire amount expended on his campaign. After paying the fee, Biener was included on the Democratic primary ballot and received 48% of the votes but did not win the Democratic nomination.

Biener's suit alleged that the filing fee requirement is unconstitutional on three grounds: (1) it adds an impermissible wealth requirement to the qualifications for House membership, (2) it denies equal protection to non-indigent candidates who would like to seek office without paying a filing fee, and (3) it violates the Due Process Clause because it inappropriately delegates state power to political parties. Calio and the Party made a motion for summary judgment, which the District Court granted on all three grounds.

## II. DISCUSSION

We have jurisdiction pursuant to 28 U.S.C. § 1291, since this is an appeal of a final decision of a federal district court. We exercise plenary review over all jurisdictional questions, including whether a plaintiff has standing to assert a particular claim. *See Gen. Instrument Corp. of Del. v. Nu-Tek Elec. & Mfg., Inc.,* 197 F.3d 83, 86 (3d Cir. 1999). We also review the District Court's decision to grant summary judgment on a plenary basis. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 602-03 (3d Cir. 2002). A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In reviewing the grant of summary judgment, we must affirm if the record evidence submitted by the non-movant 'is merely colorable or is not significantly probative.'" *See Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.,* 311 F.3d 226, 232 (3d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

## A. STANDING

As a threshold matter, we must consider whether Biener has standing to make his claims. Our decision here is informed by our recent opinion in *Belitskus v. Pizzingrilli,* 343 F.3d 632 (3d Cir. 2003). In that case, which involved a challenge to Pennsylvania's election filing fees, we rejected the argument "that a candidate challenging a mandatory filing fee must establish that payment of the fee would result in the complete depletion of personal or

3

campaign funds in order to demonstrate injury to a protected interest." *Id.* at 640.

Biener, by paying the $3000 filing fee in protest, depleted two-thirds of his campaign funds. This is an injury in fact, which is clearly traceable to the filing fee set by the Party and Calio. The injury also can be redressed by a favorable decision in this court. Biener thus has standing to challenge the filing fee on his own behalf. *See AT&T Communications of N.J., Inc. v. Verizon N.J., Inc.,* 270 F.3d 162, 170 (3d Cir. 2001) (reciting the three elements of a case or controversy for purposes of standing: injury, causation, and redressability); *see also Belitskus,* 343 F.3d at 640 (citing *Green v. Mortham,* 155 F.3d 1332 (1998), an Eleventh Circuit Court of Appeals case in which the candidate used campaign contributions to pay the filing fee under protest and the court did not question his standing).

Biener also purports to make claims on behalf of indigent or near-indigent individuals. For example, Biener alleges that Delaware's alternative to filing fees for indigent candidates is illusory because so few people qualify as indigent under the statutory definition. Biener does not contend, however, that he is in the group of near-indigent individuals who are allegedly prevented from availing themselves of this ballot-access alternative. Because he is not a member of that group nor does he possess a "close relationship" worthy of allowing

him to act as a third-party, Biener lacks standing to make this claim. *See Pa. Psychiatric Soc'y v. Green Spring Health Servs.,* 280 F.3d 278, 288 (3d Cir. 2002) ("It is a well-established tenet of standing that a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.") (internal quotations omitted).

## B. QUALIFICATIONS CLAUSE

The District Court held that Delaware's filing fee for the Democratic primary does not violate the Qualifications Clause by improperly adding a wealth requirement to the qualifications for House membership. The Qualifications Clause of the United States Constitution states that "No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen." U.S. CONST. art. I, § 2, cl. 2. Supreme Court precedent establishes that states have no power to add to these age, citizenship, and residency requirements. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 798-99 (1995) (citing a long list of cases in numerous courts that conclude states lack the authority to supplement the qualifications in the Qualifications Clause). Furthermore, states should not attempt to disguise qualifications for office as qualifications for election as a way to circumvent this rule, or they risk the qualifications for

4

election being found unconstitutional. *Id.* at 831 ("[D]ressing eligibility to stand for Congress in ballot access clothing trivializes the basic principles of our democracy that underlie [the Qualifications] clause[].") (internal quotations omitted). The issue here is whether the filing fee for the Democratic primary constitutes an additional qualification for House membership.

Biener's Qualifications Clause claim is based in large part on *Thornton*, in which the Supreme Court found a term-limitation statute unconstitutional as an impermissible attempt to add to the qualifications for office established by the Constitution. *Id.* at 837-38. Latching onto *Thornton*, Biener argues that Delaware's filing fee is an eligibility requirement for office and thus an impermissible wealth qualification. In support of his claim, Biener points to the debate by the Framers of the Constitution over whether to include a wealth or property-holding requirement in the Qualifications Clause, and their ultimate decision that qualifications would be limited to age, citizenship, and residency.

*Thornton* and the "impressive and uniform body of judicial decisions" cited therein where courts have struck down laws on the basis that they improperly added qualifications to those found in the Qualifications Clause focus on qualifications that were inherent in the candidate. *See, e.g., Thornton*, 514 U.S. at 800. For instance, all of the following qualifications have been found unconstitutional: term limits; district residency requirements; loyalty oath requirements; voter registration requirements; and restrictions on those convicted of felonies. *See, e.g., id.* at 799; *Schaefer v. Townsend*, 215 F.3d 1031, 1039 (9th Cir. 2000); *Campbell v. Davidson*, 233 F.3d 1229, 1231 (10th Cir. 2000). Unlike these impermissible qualifications, the filing fee for the Democratic primary is not inherent in the candidate. *See Fowler v. Adams*, 315 F.Supp. 592, 594 (M.D. Fla. 1970) (stating that a filing fee, unlike the Article I, Section 2, Clause 2 "Qualifications," "is not personal to the candidate but may be paid by anyone in his behalf").

In a recent case before this Court, we rejected a Qualifications Clause challenge to the Hatch Act because "[t]he Act allows a citizen a choice." *Merle v. United States*, 351 F.3d 92, 97 (3d Cir. 2003). There, we took notice that a "resign to run" law may force the prospective candidate to make a choice between federal employment and running for elective office, but does not constitute an "additional qualification for the office of United States Representative." *Id.* Likewise, a candidate financially able to pay a filing fee, but unwilling to do so, is not being subjected to an impermissible wealth requirement.

Finally, we disagree with Biener's contention that *Thornton* capsized existing precedent upholding states' rights to require filing fees. *See Fowler*, 315 F.Supp. at 594; *Cassidy v. Willis*,

5

323 A.2d 598, 602 (Del. 1974); *Bodner v. Gray*, 129 So.2d 419, 420-21 (Fla. 1961); *Kenneweg v. Allegheny County Comm'rs*, 62 A. 249, 251 (Md. 1905). Even after *Thornton*, states still have the right to regulate elections by imposing reasonable requirements on candidates. In *Thornton*, the Court held that "an amendment with the avowed purpose and obvious effect of evading the requirements of the Qualifications Clause[] by handicapping a class of candidates cannot stand." 514 U.S. at 831. Here, there is no avowed purpose to evade the constitution and exclude a class; instead, the purpose of the filing fee is to keep Delaware's ballots manageable. Moreover, the logical consequences of Biener's argument would jeopardize states' use of signature requirements.

## C. EQUAL PROTECTION CLAUSE

Next, we address whether the District Court erred when it granted summary judgment for Appellees Calio and the Party on the Equal Protection Clause claim. Like the District Court, we hold that there is no equal protection violation. Equal protection jurisprudence mandates a ballot-access alternative for those *unable* to pay a filing fee. Delaware law complies with this precedent by providing an alternative for indigent candidates. Here, Biener alleges only an *unwillingness*, not an inability, to pay. In its history, the Supreme Court has considered only two election filing fee cases, both of which were decided on equal protection grounds. In 1972, the

Supreme Court struck down an election primary filing fee where it was an "absolute prerequisite" to participation. *Bullock v. Carter*, 405 U.S. 134, 137 (1972). The filing fees in that case were set by the county executive committees of the individual political parties and were subject to limitations only in some counties. *Id.* at 137-38. The proceeds of the fee went to the party. *Id.* at 137. The *Bullock* court said that despite the political parties' involvement with the filing fees, "the mechanism of such elections is the creature of state legislative choice and hence is state action within the meaning of the Fourteenth Amendment." *Id.* at 140 (internal citations and quotations omitted).

The *Bullock* court "closely scrutinized" the filing fee, looking at whether the fee was reasonably necessary to the accomplishment of legitimate state objectives. *Id.* at 144. The Court recognized that states have a legitimate interest in regulating the number of candidates on the ballot to "prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority, or at least a strong plurality." *Id.* at 145. Additionally, it is a legitimate objective for states to protect the ballot from including frivolous or fraudulent candidates. *Id.* But "[t]o say that the filing-fee requirement tends to limit the ballot to the more serious candidates is not enough." *Id.* The Court held the differing treatment must also bear some

relevance to the objective, and that in *Bullock* the fee was not reasonably necessary because other means to protect the state's valid interests were available. *Id.* at 145-46. The decision was motivated by a concern that without an alternative means of ballot access affluent candidates were advantaged. *Id.* at 144.

A few years later, in *Lubin v. Panish,* an indigent candidate brought a class-action suit to prevent California from enforcing its filing fee. 415 U.S. 709 (1974). The California Elections Code made forms required for nomination and election issuable only once candidates paid a non-refundable filing fee. *Id.* at 710. The fee amount was tied to the salary of the office sought. *Id.* As in *Bullock,* the Supreme Court applied a close scrutiny test and held that the fee was unconstitutional because no alternate means of ballot access was available for indigent candidates. *Id.* at 717-18. According to the Court, *Lubin* was a less straightforward case than *Bullock* because California's fees were not as exorbitant. *Id.* at 715 n.4.

More recently, we considered the constitutionality of Pennsylvania's election filing fees. Because the ruling occurred after briefs were filed in this case, we sought comment from the parties on the applicability of *Belitskus*, 343 F.3d 632. In *Belitskus,* we held that Pennsylvania's filing-fee requirement was unconstitutional under the Equal Protection Clause because it failed to

provide a reasonable alternative means of ballot access to indigent candidates. *Id.* at 647. We applied a heightened level of scrutiny because indigent plaintiffs were challenging a mandatory filing fee. *Id.* at 644-45.

The issue here is whether the filing fee violated the Equal Protection Clause by extending alternate means of ballot access only to indigent candidates.[1] The parties agree that Biener cannot avail himself of Delaware's alternate means of accessing the ballot—receiving the requisite number of signatures on a campaign petition—because he is not indigent or even near-indigent. Biener's claim is that Delaware's filing fee is unconstitutional because it lacks an equivalent alternative for non-indigent candidates.[2]

Biener urges us to find Delaware's filing fee unconstitutional under *Bullock* and *Lubin*. But Biener's reliance on *Bullock* and *Lubin* is misplaced because the candidates in both cases were indigent. *See Bullock,* 405

---

1. Biener does not challenge the reasonableness of the $3000 filing fee.

2. Biener makes an argument that Delaware's definition of indigence is useless because so few people qualify for the alternative means of ballot access. *See* 15 Del. Code § 3101(e). As discussed *supra*, Biener lacks standing to make this argument, as he does not purport to be in the class of near-indigent persons who are excluded.

U.S. at 146 ("the candidates . . . affirmatively alleged that they were *unable*, not simply *unwilling*, to pay the assessed fees"); *see also Cassidy*, 323 A.2d at 601 (noting that in *Lubin* the "inability to pay the fee . . . is so much a part of the decision that we cannot ignore it here"). Biener turns *Bullock* and *Lubin* on their heads when he argues that indigents are advantaged under Delaware's current system because they have an alternative that other candidates do not. Biener's assertion that we should reach the same result as *Bullock* is discouraged by the language of that case, where the Court said the opinion should not be read to "cast doubt on the validity of reasonable candidate filing fees . . . in other contexts." 405 U.S. at 149.

Because Biener is not claiming indigence, *Bullock, Lubin,* and *Belitskus*, while not determinative, are informative on the Equal Protection analysis. "In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968) (cited in *Bullock, Lubin,* and *Belitskus*).

Our first inquiry in an equal protection challenge is the appropriate level of scrutiny. *See Reform Party of Allegheny County v. Allegheny County Dep't of Elections*, 174 F.3d 305, 314 (3d Cir. 1999) (en banc). The scrutiny test depends on the filing fee's effect on Biener's rights. *Id.* We need not automatically apply close scrutiny just because this case deals with ballot access. *See Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992).

In *Belitskus*, we followed the flexible standard set forth in *Anderson v. Celebrezze* for determining the appropriate level of scrutiny in ballot access cases. 460 U.S. 780, 789 (1983), *cited in Belitskus,* 343 F.3d at 643. We decline to apply the *Anderson* balancing test here. In *Belitskus*, such an inquiry was appropriate because First Amendment considerations were at issue. Unlike *Belitskus*, Biener's challenge relies solely on the Fourteenth Amendment and he makes no allegations based on freedom of association. *See Belitskus,* 343 F.3d at 643 n.8 (noting that *Anderson* was not expressly decided on equal protection grounds and thus "some uncertainty exists regarding its applicability to equal protection-based challenges," but applying *Anderson* nonetheless because "neither party challenges its application")*; Anderson,* 460 U.S. at 787 n.7 ("In this case, we base our conclusions directly on the First and Fourteenth Amendments and do not engage in a separate Equal Protection Clause analysis.").[3]

---

3.    Even if we were to apply the *Anderson* balancing test, our conclusion that we would use a rational basis test would remain unchanged.

Rather than apply *Anderson*, we proceed on a traditional equal protection analysis, whereby only suspect classes and fundamental rights receive intermediate or strict scrutiny. The right to run for office has not been deemed a fundamental right. *Bullock*, 405 U.S. at 142-43. Biener also cannot establish an infringement on the fundamental right to vote, because "voter's rights are not infringed where a candidate chooses not to run because he is unwilling to comply with reasonable state requirements." *See Adams v. Askew*, 511 F.2d 700, 703 (5th Cir. 1975). As the filing fee does not infringe upon a fundamental right, nor is Biener in a suspect class, we consider the claims under a rational basis test. *See id.* at 703-04 (applying a rational basis test to hold that an alternative to a filing fee was required only for indigent candidates).

Having established that the appropriate test is rational review, the question becomes whether the filing fee meets that standard. *See, e.g., Romer v. Evans,* 517 U.S. 620, 632 (1996) (noting that even under the most deferential of standards, "we insist on knowing the relation between the classification adopted and the object to be obtained"). The justification for the filing fee offered by both the State of Delaware and the Party is that it will help distinguish serious from non-serious candidates to keep the ballot manageable. The Supreme Court has recognized that the interest in keeping ballots manageable, often manifested in a filing fee, is an

objective "of the highest order." *Lubin*, 415 U.S. at 715 (referencing *Bullock*, 405 U.S. 134); *Bullock,* 405 U.S. at 145-46 (stating in *dicta* that "there may well be some rational relationship between a candidate's willingness to pay a filing fee and the seriousness with which he takes his candidacy"). Keeping the ballot manageable is an interest sufficient to meet the low standard of review. *See Belitskus*, 343 F.3d at 647 (stating that distinguishing serious from non-serious candidates is a legitimate interest, but it is not enough where there is no reasonable alternative means of ballot access for indigents).

In concluding that Biener has suffered no equal protection violation here, we follow the conclusion reached by the Fifth Circuit Court of Appeals in *Adams.* 511 F.2d 700. There, the Court was faced with non-indigent candidates who paid the requisite filing fee under protest and sued for a refund alleging the fee was unconstitutional. *Id.* at 701. Basing its decision on *Bullock* and *Lubin,* the Fifth Circuit Court of Appeals held that candidates who were able, but simply unwilling, to pay a filing fee are not entitled to another route to the ballot. *Id.* at 702. The court found determinative that "it is not the statute which perforce restricts the ballot *but the candidate's decision to pay or not to pay*." *Id.* at 703 (emphasis added).

> Voters' rights are not infringed where a candidate chooses not to run because he is unwilling to comply with reasonable state

9

requirements. They are no more affected by a candidate's unwillingness to pay a reasonable filing fee than they are when he refuses to comply with financial disclosure laws, or, for that matter, a reasonable petitioning requirement.

*Id.* We quite agree. The availability of choice is fatal to Biener's equal protection claim.

## D. DUE PROCESS CLAUSE

Next, Biener alleges an improper delegation of power under the Due Process Clause. Biener argues that because Delaware allows political parties to set and retain filing fees, 15 Del. Code § 3103 is unconstitutional.[4] We will affirm the District Court, because there is no due process violation where, as here, the state limits the private party's discretion and the private party operates within the established limitations. The Due Process Clause of the Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property without due process of law." The Clause "was intended to prevent government from abusing its power, or employing it as an instrument of oppression." *Deshaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S.

189, 196 (1989) (internal citations and quotations omitted). The threshold issue here is whether Biener possesses a protected liberty or property interest in access to the Democratic primary ballot. In an analogous case, the Supreme Court held that impositions on the right to run for *state* political office do not implicate the Due Process Clause. *See Snowden v. Hughes*, 321 U.S. 1, 7 (1944). We do not decide here whether the *Snowden* holding would extend to *federal* elective offices, because even if we were to follow the result of the Supreme Court and hold that the right to run for federal elected office warrants due process protection, doing so would not save Biener's due process claim.

Generally, the Fourteenth Amendment protects individuals only against government action, unless the state has delegated authority to a private party, thereby making the actor a "state actor" and implicating the Due Process Clause. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 195 (1988). The Due Process Clause limits the manner and extent to which a state legislature may delegate legislative authority to a private party acting as a state actor. *See, e.g., Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886). Only if the state legislature imposes sufficient limitations is the exercise of authority by the private party constitutional. *See, e.g., Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 121-22 (1928) (concluding that the delegation of zoning power to individual

---

4. Delaware's authority to set filing fees itself is not at issue. Nor is there a contention that the Party has exceeded the scope of authority delegated to it by the state.

landowners violated the due process clause because the ordinance allowed no opportunity for review and left the private parties "free to withhold consent for selfish reasons or arbitrarily . . . [based on] will or caprice")*; Eubank v. City of Richmond*, 226 U.S. 137, 143-44 (1912); *Gen. Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1455 (2d Cir. 1991) (noting that delegation without standards allows the private party to exercise selfish or arbitrary motivations or whims). Without sufficient limitations, the delegation of authority can be deemed void for vagueness as allowing *ad hoc* decisions or giving unfettered discretion to the private party.

In this case, the District Court held that Delaware's limitation on the filing fee amount is a sufficient limitation on the Party's authority to prevent the delegation from running afoul of the Due Process Clause. We agree. Delaware delegates to political parties the authority to set the filing fee for election primaries, so long as the fee does not exceed 1% of the total salary for the term of office the candidate seeks. 15 Del. Code § 3103. The State also allocates 100% of the fee to the Party for it to keep, or choose to rebate to the candidate in whole or in part. Effectively, the State of Delaware has created a means of revenue production for the Party, but caps the profitability by imposing an upper limit.[5] Contrary to Biener's contention that the Party "controls the price of admission to the electoral process," it is the state that sets the only price that matters to potential candidates who generally pay the filing fee out of campaign coffers—the maximum price.

We have not found, nor has Biener asserted, any instance where a federal appellate court deemed a state delegation unconstitutional under the Due Process Clause for any reason but a lack of standards allowing exercise of the authority on a whim or caprice. There is no evidence that the Party could exercise its ability to set filing fees selfishly, arbitrarily, or based on will or caprice. *See Roberge*, 278 U.S. at 121-22. Biener's reference to *Bartley v. Davis*, a 1986 case from the Delaware Court of Chancery, fails to convince us that the delegation of authority for setting filing fees has been abused by the Party.

### III. CONCLUSION

In sum, Delaware's filing fee is constitutional under the Qualifications, Equal Protection, and Due Process Clauses. We will affirm the District Court's summary judgment order.

---

5. What use the Party puts filing fee proceeds to is irrelevant to our analysis. We consider only whether the delegation of authority by the State of Delaware is facially impermissible.