

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-12-2008

# Nickens v. Dept Corr

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2207

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Nickens v. Dept Corr" (2008). 2008 Decisions. Paper 1237.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1237

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2207
_____

THEODORE M. NICKENS,
                                        Appellant

v.

DEPT. OF CORRECTIONS; JEFFREY BEARD, Ph.D;
DAVID J. GOOD, Warden; REBECCA REIFER, Assistant Warden

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 05-cv-0269
(Honorable Kim R. Gibson)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 19, 2008

Before:  SCIRICA, <u>Chief</u> <u>Judge</u>, HARDIMAN and STAPLETON, <u>Circuit</u> <u>Judges</u>.

(Filed: May 12, 2008)
_____

OPINION OF THE COURT
_____

<u>PER CURIAM</u>.

        Appellant, Theodore Nickens, appeals pro se from the District Court's entry of

summary judgment in favor of the appellees.  For the reasons that follow, we will affirm.

I.

Nickens is presently incarcerated at the State Correctional Institution at Cresson, Pennsylvania ("SCI-Cresson). In June 2005, Nickens commenced an action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Pennsylvania against prison officials (the "Commonwealth Defendants") alleging that since he has been incarcerated at SCI-Cresson, he has been unable to communicate with his wife, Helen Nickens, who is deaf and uses a Telecommunications Device for the Deaf ("TTY/TDD") to communicate via a telephone line. According to Nickens, the prison's failure to provide him with the use of a TTY/TDD violates the Americans With Disabilities Act (the "ADA") and the Rehabilitation Act of 1973 (the "RA").[1] Nickens sought compensatory damages and an order requiring the prison to purchase a TTY/TDD.

In September 2006, Nickens filed a motion for partial summary judgment on his ADA and RA claims. Soon thereafter, the Commonwealth Defendants filed a cross motion seeking judgment on the grounds that Nickens lacks standing to bring the present claims, and that he failed to exhaust his administrative remedies prior to commencing this action. On March 23, 2007, Magistrate Judge Keith A. Pesto recommended granting the Commonwealth Defendants' summary judgment motion on the ground that Nickens lacks

_____

[1] In the complaint, Nickens also alleged a violation of the "Pennsylvania Handicappers Civil Rights Act." However, neither Magistrate Judge Pesto nor the District Court recognized this claim in considering the parties' summary judgment motions. Because Nickens does not challenge the District Court's failure to consider this claim, we will not do so here.

standing to bring a claim "under the ADA (or any other federal law)" on the basis of his wife's disability. On April 16, 2007, the District Court adopted Magistrate Judge Pesto's report and recommendation, denied Nickens's motion, and granted the Commonwealth Defendants' motion. The present appeal followed.[2]

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's grant of summary judgment for lack of standing. Biener v. Calio, 361 F.3d 206, 210 (3d Cir. 2004). We may affirm the District Court's order on any ground supported by the record. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).

## III.

In order to satisfy the "irreducible constitutional minimum of standing" under Article III, a plaintiff must meet three requirements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); UPS Worldwide Forwarding, Inc. v. United States Postal Serv., 66 F.3d 621, 626 (3d Cir. 1995). First, the plaintiff must have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized,

---

[2]On the same day that he filed a notice of appeal, Nickens filed a "Response to the Court Memorandum Order." The District Court construed this filing as a motion for reconsideration and, on April 23, 2007, denied relief. At that time, Nickens's notice of appeal became effective. See Fed. R. App. P. 4(a)(4)(B)(i). Since Nickens did not subsequently amend his notice of appeal to seek review of the District Court's order denying his motion for reconsideration, that order is not presently before us. See Fed. R. App. P. 4(a)(4)(B)(ii).

and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. Second, there must be a causal connection between the injury and the conduct complained of. Id. Third, it must be likely that the injury will be redressed by a favorable decision. Id. at 561.

Here, Magistrate Judge Pesto found that Nickens fails to meet the "injury in fact" component of constitutional standing because he failed to show that "he has suffered some concrete and particularized injury separate and apart from the world in general." (Report & Recommendation, at p. 2.) According to the Magistrate Judge, Nickens did not suffer an injury because he himself is not disabled. We disagree. The prison's failure to provide Nickens with the use of a TTY/TDD so that he could communicate with his wife constitutes a concrete and particularized injury sufficient to satisfy the "injury in fact" requirement of Article III standing. Furthermore, Nickens appears to meet the remaining elements of constitutional standing, as his inability to communicate with his wife was plainly caused by SCI-Cresson's failure to provide him with use of a TTY/TDD, and a decision favorable to Nickens would undoubtedly redress his injuries. See Lujan, 504 U.S. at 560-61.

Therefore, we believe that the District Court erred insofar as it found that Nickens lacked constitutional standing to bring his dispute to federal court. Nevertheless, we will affirm the court's entry of summary judgment in favor of the Commonwealth Defendants because Nickens fails to satisfy another prerequisite to suit—exhaustion of his

4

administrative remedies under the Prison Litigation Reform Act of 1996 (the "PLRA"), 42 U.S.C. § 1997e(a).[3]

Under the PLRA, a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 (2001). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (quoting Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004)).

The Pennsylvania Department of Corrections provides for a three-tiered grievance system which serves as a prisoner's administrative remedy. DC-ADM-804 Part VI (the "Grievance Policy") sets forth specific instructions for initiating a grievance and pursuing it through the administrative process. First, the prisoner must submit an Initial Grievance to the Facility Grievance Coordinator using the form identified as "DC-804, Part 1." (DC-ADM-804 Part VI.A.6.) After the Grievance Coordinator has completed the Initial Review, the prisoner may file an appeal to the Facility Manager. (DC-ADM-804 Part VI.C.) The appeal must be submitted, in writing, within 10 working days from the date of the Initial Review decision. (DC-ADM-804 Part VI.C.1.b.) "Each appeal must be clearly

---

[3]The Commonwealth Defendants moved for summary judgment on this basis, and Nickens submitted a response. See Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that exhaustion under the PLRA is an affirmative defense to be pled and proven by the defendants).

labeled as an appeal at the top of the document. In cases appealing an Initial Review decision, the appeal must also include the grievance number at the top of the document." (DC-ADM-804 Part VI.C.1.e.) An inmate who is dissatisfied with the disposition of an appeal from the Facility Manager may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within 15 days of the Facility Manager's decision. (DC-ADM-804 Part VI.D.1.b.) This final appeal may not be taken until the prisoner has complied with all procedures established for the first two steps of the grievance procedure. (DC-ADM-804 Part VI.D.1.d.)

The administrative record in this case indicates that Nickens filed his first grievance, Grievance No. 105350, on December 23, 2004. (Respondent's Motion for Summary Judgment, Attachment B.) In the "DC-804, Part 1, Official Inmate Grievance," Nickens alleged that, under DOC policy and federal law, the prison was required to provide him with use of a TTY/TDD. (Id.) On January 11, 2005, Corrections Officer Jadlocki conducted an Initial Review and provided Nickens with the telephone number for the TTY/TDD relay operator. (Id.) He further instructed Nickens to write to him if, after trying that number, he was still unable to make contact with his family. (Id.)

It appears that the next action that Nickens took was on February 9, 2005, when he submitted a second "DC-804, Part 1" form concerning his inability to contact his wife. (Grievance No. 109578, Respondent's Motion for Summary Judgment, Attachment C.) Nickens again complained of the prison's failure to provide a TTY/TDD, and explained

6

that the number for the relay operator was not working. In the box provided for the Facility Grievance Coordinator's name, Nickens instead wrote "Administrative [sic] Good." The Facility Grievance Coordinator, Rebecca M. Reifer, construed Nickens's filing as a second grievance, and, on February 14, 2005, completed a "DC-804, Part 3, Grievance Rejection Form" informing Nickens that his grievance was being rejected because "the issue presented on the attached grievance has been reviewed and addressed previously in grievance no. 105350 dated 12/27/04." (Id.; DC-ADM-804 Part VI.B.6.)

Next, on April 28, 2005, Nickens filled out a Form DC-135A, "Inmate's Request to Staff Member," in which he complained once again about his inability to contact his wife. (Respondent's Motion for Summary Judgment, Attachment E.) According to the Grievance Policy, inmates are encouraged to use this form to notify the Unit Manager of a problem so that it can be resolved informally without resort to the grievance system. (DC-ADM-804 Part VI.A.4.) Nickens addressed this form to "Administrative D.J. Good." Despite Nickens's designation, Nickens's Unit Manager, Tim Smith responded to this request, explaining that the problem appeared to be that Helen Nickens had not been at home when the calls had been placed. Smith instructed Nickens to schedule times with his wife for a phone call. Nickens did not submit any other documents to the grievance department complaining of the prison's failure to provide for use of a TTY/TDD.

Therefore, Grievance Nos. 105350 and 109578, and the April 28, 2005 DC-135A, are the only documents that Nickens submitted as part of his effort to obtain

7

administrative relief. In his opposition to the Commonwealth Defendants' motion for summary judgment, Nickens argued that he attempted to appeal from the denial of his grievances, but that Ms. Reifer prevented his appeals from reaching Superintendent Good. However, even assuming that Nickens's filings were attempts to appeal to Superintendent Good, his efforts nonetheless fail to satisfy the exhaustion requirement under the PLRA.

First, to the extent that Nickens argued that his second grievance—which, as noted above, was addressed to Superintendent Good—was an attempt to appeal from the Initial Review of his first, it was both untimely under DC-ADM-804 Part VI.C.1.b. and in violation of DC-ADM-804 Part VI.C.1.e. Specifically, Nickens was required to submit, within 10 days from the date of the Initial Review decision (January 11, 2005), a document that was clearly labeled at the top as an appeal from Grievance No. 105350. (DC-ADM-804 Part VI.C.1.b.); (DC-ADM-804 Part VI.C.1.e.). Instead, Nickens waited nearly one month to raise the issue again, and failed to properly identify the document he submitted as an appeal. Although the Grievance Policy does not specifically preclude an inmate from using an Official Inmate Grievance form for an appeal, it is clear that this form is intended for a different use, and the Grievance Policy does make clear that all appeals must be clearly labeled as such. (Id.) Therefore, Nickens's second grievance does not comply with administrative requirements pertaining to appeals from an Initial Review decision. Similarly, insofar as Nickens intended his April 28, 2005 DC-

8

135A—which he also addressed to Superintendent Good—to be an appeal from the denial of his second grievance, it was likewise untimely under DC-ADM-804 Part VI.C.1.b. and in violation of DC-ADM-804 Part VI.C.1.e. As for Nickens's allegations that Ms. Reifer repeatedly crossed out Superintendent Good's name in order to obstruct his appeals, the record does not support his allegations.

This Court's case law makes clear that a prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA. See Williams, 482 F.3d at 639; Spruill, 372 F.3d at 228, 231. Because Nickens failed to do so, he cannot proceed with this action in federal court. See 42 U.S.C. § 1997e(a).

For the foregoing reasons, we will affirm the District Court's order granting the government's motion for summary judgment.